Nos. 23-124, 23-150, 23-188

# In the United States Court of Appeals
## FOR THE NINTH CIRCUIT

MACY'S INC.,

*Petitioner / Cross-Respondent / Intervenor*,

v.

NATIONAL LABOR RELATIONS BOARD

*Respondent / Cross-Petitioner*,

and

INTERNATIONAL UNION OF OPERATING ENGINEERS,
STATIONARY ENGINEERS, LOCAL 39,

*Respondent / Cross-Petitioner / Intervenor*.

On Petitions for Review and Cross-Application for Enforcement
of an Order of the National Labor Relations Board

**BRIEF OF THE CHAMBER OF COMMERCE
OF THE UNITED STATES OF AMERICA,
COALITION FOR A DEMOCRATIC WORKPLACE, AND
NATIONAL RETAIL FEDERATION AS AMICI CURIAE
IN SUPPORT OF THE PETITION FOR REHEARING**

JORDAN L. VON BOKERN
MARIA C. MONAGHAN
U.S. CHAMBER LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062
(202) 463-5337

*Counsel for the Chamber of
Commerce of the United States of
America*

MICHAEL E. KENNEALLY
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-3000

*Counsel for Amici Curiae*

## CORPORATE DISCLOSURE STATEMENT

- The Chamber of Commerce of the United States of America is a non-profit, tax-exempt organization incorporated in the District of Columbia. It is not a publicly traded corporation. It has no parent corporation, and no publicly held company has 10% or greater ownership in the organization.

- The Coalition for a Democratic Workplace is not a publicly traded corporation. It is a division of the Employer Policy Network Association, and no publicly held company has 10% or greater ownership in the organization.

- The National Retail Federation is not a publicly traded corporation. It has no parent corporation, and no publicly held company has 10% or greater ownership in the organization.

# TABLE OF CONTENTS

**Page**

Corporate Disclosure Statement....................................................i

Table of Authorities.................................................................iii

Interest of Amici Curiae........................................................... 1

Summary of Argument............................................................ 3

Argument............................................................................ 4

I.    Congress denied the Board authority to award damages. ............ 4

    A.    The statutory text does not permit awards of compensatory or consequential damages. ........................... 4

    B.    Comparing the Act to other statutes confirms that *Thryv* damages are not available.......................................... 8

    C.    The constitutional avoidance canon provides further reason to reject *Thryv* damages. ....................................... 12

II.    En banc rehearing is warranted. .................................................. 19

Conclusion ........................................................................ 21

Form 8. Certificate of Compliance for Briefs........................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.L.A. Schechter Poultry Corp. v. United States*,
295 U.S. 495 (1935) ................................................................ 16

*Albemarle Paper Co. v. Moody*,
422 U.S. 405 (1975) ............................................................. 8, 9

*Bayer v. Neiman Marcus Grp., Inc.*,
861 F.3d 853 (9th Cir. 2017) ............................................... 14

*Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*,
494 U.S. 558 (1990) ............................................................... 15

*Comm'r v. Schleier*,
515 U.S. 323 (1995) ............................................................... 11

*Crowell v. Benson*,
285 U.S. 22 (1932) ................................................................. 13

*FDA v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000) ................................................................. 7

*Feltner v. Columbia Pictures Television, Inc.*,
523 U.S. 340 (1998) ............................................................... 14

*Granfinanciera, S.A. v. Nordberg*,
492 U.S. 33 (1989) ................................................................. 14

*Heartland Plymouth Ct. MI, LLC v. NLRB*,
838 F.3d 16 (D.C. Cir. 2016) ............................................... 19

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) ............................................................... 12

*Lebow v. Am. Trans Air, Inc.*,
86 F.3d 661 (7th Cir. 1996) ................................................. 15

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Mertens v. Hewitt Assocs.,*
508 U.S. 248 (1993) ........................................................................ 6, 14

*NLRB v. Amax Coal Co.,*
453 U.S. 322 (1981) ............................................................................ 20

*NLRB v. Jones & Laughlin Steel Corp.,*
301 U.S. 1 (1937) ................................................................................ 14

*NLRB v. Starbucks Corp.,*
125 F.4th 78 (3d Cir. 2024) ................................................. 2, 3, 6, 12

*Phelps Dodge Corp. v. NLRB,*
313 U.S. 177 (1941) .............................................................................. 5

*SEC v. Jarkesy,*
603 U.S. 109 (2024) ................................................................ 13, 14, 16

*Smith v. Barton,*
914 F.2d 1330 (9th Cir. 1990) ............................................................ 14

*Stern v. Marshall,*
564 U.S. 462 (2011) ...................................................................... 13, 16

*Thryv, Inc.,*
372 N.L.R.B. No. 22 (Dec. 13, 2022) ....................................... *passim*

*UAW v. Russell,*
356 U.S. 634 (1958) .......................................................................... 3, 6

*United Constr. Workers v. Laburnum Constr. Corp.,*
347 U.S. 656 (1954) .......................................................................... 6, 7

*United States v. Burke,*
504 U.S. 229 (1992) ........................................................... 8, 9, 10, 11

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

## Statutes

Age Discrimination in Employment Act of 1967 ............................. 10, 11

Civil Rights Act of 1964.................................................. *passim*
    42 U.S.C. § 2000e-5(g)(1) ............................................... 8

Civil Rights Act of 1991................................................... 12
    42 U.S.C. § 1981a(a)(1) ................................................ 12
    42 U.S.C. § 1981a(b)(3) ............................................... 12

Fair Housing Act of 1968 ................................................. 11
    42 U.S.C. § 3613(c)(1) ................................................ 11

Family and Medical Leave Act of 1993.................................... 11
    29 U.S.C. § 2617(a)(1)(A)(i)(II) ...................................... 11

Labor Management Relations Act of 1947 ................................... 5

National Industrial Recovery Act ......................................... 16

National Labor Relations Act ....................................... *passim*
    29 U.S.C. § 160(c)................................................ *passim*
    29 U.S.C. § 160(f) ................................................... 19

## Constitutional Provisions

U.S. CONST.
    art. III................................................. 3, 12, 13, 18
    amend. VII ............................................. 12, 13, 18

## Other Authorities

9TH CIR. R. 29-2(a) ....................................................... 1

H.R. 20, 118th Cong. (2023) .............................................. 7

H.R. 842, 117th Cong. (2021) ............................................. 7

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

H.R. 2474, 116th Cong. (2019) ................................................................ 7

NATIONAL LABOR RELATIONS BOARD, LEGISLATIVE HISTORY OF THE NATIONAL LABOR RELATIONS ACT, 1935 (1949) ............... 16, 17, 18

## INTEREST OF AMICI CURIAE[1]

**The Chamber of Commerce of the United States of America** is the world's largest business federation. It represents approximately 300,000 direct members and indirectly represents the interests of more than 3 million businesses and professional organizations of every size, in every industry sector, and from every region of the country. An important function of the Chamber is to represent the interests of its members in matters before Congress, the Executive Branch, and the courts. To that end, the Chamber regularly files amicus curiae briefs in cases, like this one, that raise issues of concern to the nation's business community.

**The Coalition for a Democratic Workplace** is composed of hundreds of organizations representing millions of businesses that employ tens of millions of workers nationwide in nearly every industry.

**The National Retail Federation** is the world's largest retail trade association and the voice of retail worldwide. Its membership

---

[1] All parties have consented to the filing of this brief. *See* 9TH CIR. R. 29-2(a). No counsel for any party authored this brief in whole or in part, and no entity or person, aside from *amici curiae*, their members, or their counsel, made any monetary contribution to fund the preparation or submission of this brief.

includes retailers of all sizes, formats, and channels of distribution, spanning all industries that sell goods and services to consumers.

*     *     *

Amici's members include thousands of employers who are subject to the National Labor Relations Act and have a strong interest in its proper interpretation and application.  In this case, a divided panel erroneously upheld authority claimed by the National Labor Relations Board to order employers "to compensate affected employees" for "all direct or foreseeable pecuniary harms" that may flow from an unfair labor practice.  *Thryv, Inc.*, 372 N.L.R.B. No. 22, slip op. at 1 (Dec. 13, 2022).  In doing so, the panel split from *NLRB v. Starbucks Corp.*, 125 F.4th 78, 95-97 (3d Cir. 2024), which held that *Thryv* compensation exceeds the Board's authority to award equitable relief.  Amici participated through briefing and oral argument in *Starbucks* and now submit this brief urging the Court to rehear this case en banc.  The majority's acceptance of *Thryv* conflicts with text and precedent and will produce harmful consequences.  Rehearing is urgently needed to correct the Board's misinterpretation of the Act and restore uniformity among the circuits.

2

## SUMMARY OF ARGUMENT

The monetary relief that the Board awarded, and the panel upheld, constitutes tort-like damages designed "to compensate affected employees for all direct or foreseeable pecuniary harms that these employees suffer as a result of the [employer's] unfair labor practice." *Thryv*, 372 N.L.R.B. No. 22, slip op. at 1. But the National Labor Relations Act does not give the Board authority to award such damages—as Judge Bumatay recognized in dissent and as the Third Circuit recognized in holding that the Board's *Thryv* remedy "exceeds its authority under the NLRA." 125 F.4th at 97.

When employees are unlawfully discharged or suspended, the Act's available remedies are affirmative action (like reinstatement) "with or without back pay." 29 U.S.C. § 160(c). The Board may not award different monetary relief to injured employees merely because it believes full compensation is desirable. Congress chose *not* to "establish a general scheme authorizing the Board to award full compensatory damages for injuries caused by wrongful conduct." *UAW v. Russell*, 356 U.S. 634, 643 (1958). For good reason: allowing the Board to adjudicate private rights to compensatory or consequential damages, outside an Article III court

3

and without a jury, would violate the Constitution. *Thryv*'s attempt to expand the Board's remedies thus exceeds statutory limits and raises significant constitutional doubts. And the panel's decision upholding that unlawful remedy destroys the uniform application of federal labor law, will encourage forum shopping, and will chill employers' ability to exercise their own rights under the Act. The Court should grant rehearing, align itself with the Third Circuit, and reject *Thryv* compensation—assuming it does not set aside the Board's decision against Macy's in full.

## ARGUMENT

### I. Congress denied the Board authority to award damages.

#### A. The statutory text does not permit awards of compensatory or consequential damages.

Section 10(c) of the Act, 29 U.S.C. § 160(c), does not permit awards of general compensatory damages, let alone the type of consequential damages that the Board seeks to impose in this case. Instead, that provision identifies "back pay" as the monetary relief that the Board may award to employees injured by an unfair labor practice. On finding that a person has committed an unfair labor practice, the Board "shall issue . . . an order requiring such person to cease and desist from such unfair labor practice, and to take such affirmative action including

4

reinstatement of employees *with or without back pay*." 29 U.S.C. § 160(c) (emphasis added).

Under this language, not even backpay is automatic:  the provision expressly contemplates reinstatement "*without* back pay" in some cases. *Id.* (emphasis added); *Phelps Dodge Corp. v. NLRB*, 313 U.S. 177, 198 (1941) ("The remedy of back pay . . . is not mechanically compelled by the Act."). This statutory language has remained unchanged from the beginning of the Act in 1935.  *See* National Labor Relations Act, Pub. L. No. 74-198, § 10(c), 49 Stat. 449, 454 (1935).

Two legislative additions to Section 10(c) in 1947 reinforce that limitation.  First, Congress added language underscoring that "where an order directs reinstatement of the employee, *back pay may be required* of the employer or labor organization."  Labor Management Relations Act of 1947, Pub. L. No. 80-101, § 101, 61 Stat. 136, 147 (emphasis added) (codified at 29 U.S.C. § 160(c)).  Second, Congress directed that "[n]o order of the Board shall require the reinstatement of any individual as an employee who has been suspended or discharged, *or the payment to him of any back pay*, if such individual was suspended or discharged for cause."  *Id.* (emphasis added).  This limitation on backpay "makes little

5

sense"—and has a huge loophole—if the Board had unstated statutory authority to order other monetary compensation for the employee's injuries. Dissent 58. But clearly, that was not Congress's understanding in 1947 when it adopted this important amendment. Its understanding was that monetary relief available for wrongfully discharged or suspended employees consisted of backpay.

Section 10(c) thus identifies backpay as the lone, optional form of monetary relief that the Board may require as a supplement to its primary remedial authority to prohibit certain conduct or require affirmative action, like reinstatement. Ordering parties to cease and desist from their unfair labor practices—or to take affirmative corrective action—is a quintessential exercise of equitable remedial power. *Starbucks*, 125 F.4th at 95. In contrast, an award of "compensatory *damages*—monetary relief for all losses . . . sustained as a result of the alleged breach of [legal] duties"—is "the classic form of *legal* relief." *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 255 (1993). But the Act "sets up no general compensatory procedure." *United Constr. Workers v. Laburnum Constr. Corp.*, 347 U.S. 656, 665 (1954). Nor does it "authoriz[e] the Board to award full compensatory damages." *Russell*, 356 U.S. at 643. Instead, it more modestly

6

authorizes the Board to award "back pay" as a "minor supplementary" form of relief. *Laburnum Constr.*, 347 U.S. at 665.

Had Congress intended to make other monetary remedies available under the Act, it would have said so. Indeed, Congress has repeatedly considered but declined to pass bills that would have amended the Act to do that. For example, legislation proposed in 2023 would have amended Section 10(c) by expressly adding:

> [I]f the Board finds that an employer has discriminated against an employee . . . , the Board shall award the employee back pay without any reduction (including any reduction based on the employee's interim earnings or failure to earn interim earnings), front pay (when appropriate), consequential damages, and an additional amount as liquidated damages equal to two times the amount of damages awarded.

H.R. 20, 118th Cong. § 106 (2023); *see also* H.R. 842, 117th Cong. § 106 (2021) (same); H.R. 2474, 116th Cong. § 2(f) (2019) (same). Congress's repeated rejection of bills that would have permitted *Thryv* damages reinforces that in its current form, Section 10(c) does not authorize such relief. *Cf. FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159-60 (2000) (noting that Congress had "squarely rejected proposals to give

the FDA jurisdiction over tobacco," among other reasons for concluding

that the FDA lacked authority to regulate tobacco products).

## B. Comparing the Act to other statutes confirms that *Thryv* damages are not available.

The language of Section 10(c) stands in sharp contrast with other

remedial statutes. These contrasting legislative approaches confirm that

when Congress intends to bestow authority for compensatory or conse-

quential damages, it has done so explicitly.

The clearest example is Title VII of the Civil Rights Act of 1964.

The Supreme Court has recognized that Title VII's original "remedial

scheme was expressly modeled on the backpay provision of the National

Labor Relations Act." *United States v. Burke*, 504 U.S. 229, 240 n.10

(1992) (citing 29 U.S.C. § 160(c)); *see also Albemarle Paper Co. v. Moody*,

422 U.S. 405, 419 & n.11 (1975). As originally enacted, Title VII pro-

vided:

> [T]he court may enjoin the respondent from engag-
> ing in such unlawful employment practice, and or-
> der such affirmative action as may be appropriate,
> which may include reinstatement or hiring of em-
> ployees, with or without back pay . . . .

Civil Rights Act of 1964, Pub. L. No. 88-352, § 706(g), 78 Stat. 241, 261

(codified as amended at 42 U.S.C. § 2000e-5(g)(1)).

8

This language is "nearly identical" to the language of Section 10(c). Dissent 60. Like Section 10(c), Title VII's provision has a "make whole" purpose. *See Albemarle Paper*, 422 U.S. at 419. Courts have recognized that Title VII's remedy "consist[ed] of restoring victims, through backpay awards and injunctive relief, to the wage and employment positions they would have occupied absent the unlawful discrimination." *Burke*, 504 U.S. at 239. Yet courts have also recognized that this language, despite the make-whole or restorative purpose behind it, precludes the awards that the Board found permissible in *Thryv*. The Supreme Court construed Title VII's provision as "declin[ing] to recompense Title VII plaintiffs for anything beyond the wages properly due them," such as "any of the other traditional harms associated with personal injury, such as pain and suffering, emotional distress, harm to reputation, or other consequential damages (*e.g.*, a ruined credit rating)." *Burke*, 504 U.S. at 241. The same conclusion follows from the language of Section 10(c), which is substantively indistinguishable and, again, provided the model for this Title VII language. *E.g.*, *Burke*, 504 U.S. at 240 n.10; *Albemarle Paper*, 422 U.S. at 419 n.11.

9

The panel majority offered no persuasive basis for distinguishing *Burke*. *See* Panel Op. 41-43. *Thryv* created a long list of new items—never before considered part of NLRB make-whole relief—that now must be considered as part of a damages recovery under the Act despite their attenuated relation to the employer's conduct. These items include "interest and late fees on credit cards" and other "credit card debt," "penalties" based on "early withdrawals" from a "retirement account" to cover living expenses, compensation for loss of a "car" or "home" based on an inability "to make loan or mortgage payments" or "rent," and new or increased "transportation or childcare costs," among other things. 372 N.L.R.B. No. 22, slip op. at 9-10 (citation omitted). If the indistinguishable language of Title VII, according to binding Supreme Court precedent, leaves no room for consequential damages arising from a ruined credit rating, how can the Act's language permit such damages?

Title VII is not the only other federal statute that drives home the point. Another instructive comparison is between Section 10(c) and the Age Discrimination in Employment Act of 1967 ("ADEA"). It sweeps more broadly than Section 10(c) and Title VII, in that it "provides for 'such legal or equitable relief as may be appropriate to effectuate the

purposes of [the statute],'" plus recovery "of wages lost and an additional equal amount as liquidated damages." *Comm'r v. Schleier*, 515 U.S. 323, 325 (1995) (citations omitted). Yet as with Section 10(c) and Title VII, the Supreme Court has ruled that the ADEA provides no compensation for "consequential damages." *Id.* at 336 (quoting *Burke*, 504 U.S. at 239). That is true even though the ADEA (unlike the Act) authorizes "legal . . . relief" and "liquidated damages" in addition to lost wages. *See id.*

The "circumscribed remedies" of these statutes "stand in marked contrast" to other statutes that grant broader remedial authority or authorize consequential damages expressly. *Burke*, 504 U.S. at 240. For example, the Fair Housing Act of 1968 permits courts to award "actual and punitive damages." 42 U.S.C. § 3613(c)(1); *see Burke*, 504 U.S. at 240 (contrasting Title VII with the Fair Housing Act). And the Family and Medical Leave Act of 1993 provides that when an employee has no lost wages, salary, benefits, or other compensation, he or she may recover "any actual monetary losses sustained by the employee as a direct result of the violation, such as the cost of providing care." 29 U.S.C. § 2617(a)(1)(A)(i)(II).

When Congress wishes for broader compensatory damages to be available, it says so. Title VII again provides an illustration. In the Civil Rights Act of 1991, Congress revisited Title VII and authorized a much broader range of "compensatory and punitive damages," including "future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses." 42 U.S.C. § 1981a(a)(1), (b)(3). But as noted above, Congress has repeatedly declined to act to authorize such damages under Section 10(c) of the Act.

### C. The constitutional avoidance canon provides further reason to reject *Thryv* damages.

As the Third Circuit recently concluded, the Court can and should reject the Board's claimed authority in *Thryv* through ordinary principles of statutory interpretation. *See Starbucks*, 125 F.4th at 97 (seeing no need to reach constitutional questions). But if the Court has any uncertainty about the statutory question, it should follow the principle of constitutional avoidance as Judge Bumatay explained. *See* Dissent 62 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018)).

The Board's interpretation of Section 10(c) in *Thryv* raises grave constitutional concerns under Article III and the Seventh Amendment. Congress may not bestow the federal "judicial Power" on adjudicatory

12

bodies that are not Article III courts, *see* U.S. Const. art. III, § 1; it may authorize administrative adjudication of "public rights" only. *See, e.g.*, *Stern v. Marshall*, 564 U.S. 462, 484 (2011). Cases of "public rights" are those "arising 'between the government and persons subject to its authority in connection with the performance of the constitutional functions of the executive or legislative departments,'" and they contrast with "matters 'of private right, that is, of liability of one individual to another under the law as defined.'" *Id.* at 489 (quoting *Crowell v. Benson*, 285 U.S. 22, 50 (1932)). With matters of private right, "Congress may not avoid a jury trial by preventing [a] case" implicating the Seventh Amendment "from being heard before an Article III tribunal." *SEC v. Jarkesy*, 603 U.S. 109, 127 (2024). In *Jarkesy*, the Supreme Court held for the first time that Congress violated the Constitution in purporting to authorize a juryless agency adjudication of private rights that were legal (as opposed to equitable) in nature. *See id.* at 120-21, 126-27.

*Thryv* implicates the same constitutional concerns as the fraud penalty at issue in *Jarkesy*. *See* Dissent 63-71. First, compensatory or consequential damages like the *Thryv* remedy are legal rather than equitable in nature. *Jarkesy* itself recognized that "money damages are the

prototypical common law remedy." *Jarkesy*, 603 U.S. at 123 (citing *Mertens*, 508 U.S. at 255); *see also Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 47-48 (1989) (collecting cases recognizing that awards of money damages fall on the legal, rather than equitable, side of the line). And "compensation," like "punishment," is a "purpose[] traditionally associated with legal relief." *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352 (1998). To be sure, courts of equity had authority to order equitable restitution or unjust enrichment—but such an award is measured by the defendant's gain, not the claimant's injury. *See* Dissent 64-65. *Thryv* relief does not turn on the employer's gain, but on the employee's injury, so it does not fit within the equitable restitution category. Dissent 56, 65; *see also Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 866 (9th Cir. 2017) (holding that reimbursement of employee's medical expenses did not "possess the attributes of equitable restitution" because the employer did not "possess[] particular funds that rightly belong[ed] to [the plaintiff]"). And unlike backpay, *see NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48 (1937), *Thryv* damages are not "merely incidental to or intertwined with injunctive relief"; they provide compensation "in addition to, and distinct from, injunctive reinstatement." *Smith*

14

*v. Barton*, 914 F.2d 1330, 1337 (9th Cir. 1990) (classifying as legal relief compensation for "alleged loss of job responsibilities, status, and administrative leadership").

Second, *Thryv* damages often arise in the context of unlawful terminations or suspensions of an individual's employment. *See Thryv*, 372 N.L.R.B. No. 22, slip op. at 6. This type of claim is akin to common-law claims for wrongful discharge or wrongful termination rooted in contract and tort principles. Dissent 66-68; *see also Lebow v. Am. Trans Air, Inc.*, 86 F.3d 661, 668 (7th Cir. 1996) (finding a jury right for union-related retaliation claims because they are analogous to common-law contract and tort actions).

Third, the private rights exception does not apply. *Thryv* goes beyond vindicating public rights—"the public interest in effecting federal labor policy"—and targets "the wrong done the individual employee." *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 573 (1990) (citation omitted). Indeed, the Board's admitted purpose is "to rectify[] the harms actually incurred by the victims of unfair labor practices." *Thryv*, 372 N.L.R.B. No. 22, slip op. at 11. It makes no difference that unfair labor practices "originate[d] in a newly fashioned regulatory

scheme." *Jarkesy*, 603 U.S. at 135 (citation omitted). *Thryv* focuses on "the liability of one individual to another." *Stern*, 564 U.S. at 489 (citation omitted).

Congress was well aware of these potential constitutional pitfalls in 1935. With the Supreme Court's recent invalidation of the National Industrial Recovery Act fresh in mind, *see A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935), the Act's supporters deemed it essential for the Board to focus on the adjudication of public rights. And Congress rejected proposed versions of the legislation that would have granted the Board broader remedial authority. For example, the Senate's first proposal expressly authorized awards of "damages":

> The [Board's] order may require such person to cease and desist from such unfair labor practice, or to take affirmative action, *or to pay damages*, or to reinstate employees, or to perform any other acts that will achieve substantial justice under the circumstances.

S. 2926, 73d Cong. § 205(c) (1934) (emphasis added), *reprinted in* 1 NAT'L LABOR RELATIONS BD., LEGISLATIVE HISTORY OF THE NATIONAL LABOR RELATIONS ACT, 1935, at 6 (1949) [hereinafter NLRA HIST.]. This provision for damages was criticized harshly at committee hearings. *See, e.g.*, *To Create a National Labor Board: Hearing on S. 2926 Before the S. Comm.*

16

*on Education and Labor*, 73d Cong. 362 (1934) (statement of James A. Emery, General Counsel, National Association of Manufacturers), *reprinted in* 1 NLRA HIST. 396. The bill reported out of committee omitted the reference to damages, instead authorizing "an order requiring such person to cease and desist from such unfair labor practice, or to take affirmative action or to perform any other acts that will achieve substantial justice under the circumstances." S. 2926, 73d Cong. § 8(c) (as reported by S. Comm. on Education and Labor, May 10, 1934), *reprinted in* 1 NLRA HIST. 1091.

The next year, another proposal would have authorized the Board's cease-and-desist orders to require "restitution" in addition to affirmative action. S. 1958, 74th Cong. § 10(d) (1935), *reprinted in* 1 NLRA HIST. 1302. A Senate Committee memorandum explains the change:

> The broad term "restitution" is used in S. 1958 to take in the host of varied forms of reparation which the National Labor Relations Board has been making in its present decisions, to suit the needs of every individual case. An effort to substitute express language such as reinstatement, back pay, etc., necessarily results in narrowing the definition of restitution, which may include many other forms of action.

STAFF OF S. COMM. ON EDUC. & LABOR, COMPARISON OF S. 2926 (73D CONG.) AND S. 1958 (74TH CONG.) SEN. COMM. PRINT 34 (Comm. Print 1935), *reprinted in* 1 NLRA HIST. 1360.

But the broad provision for "restitution" was abandoned as well. Industry groups argued that authorizing the Board "to assess damages [or] require restitution" violated Article III, the Seventh Amendment, and due process because such "restitution or redress in civil damages" amounted to deciding "private rights" rather than "public rights." *National Labor Relations Board: Hearing on S. 1958 Before the S. Comm. on Education and Labor*, 74th Cong. 244, 848-53 (1935) (statement of James A. Emery, General Counsel, National Association of Manufacturers), *reprinted in* 2 NLRA HIST. 1630, 2234-39; *see also id.* at 445-46, 448 (statement of Robert T. Caldwell, Attorney, American Rolling Mill Co.) (raising Seventh Amendment objections to the Board's "power to make reparations"), *reprinted in* 2 NLRA HIST. 1831-32, 1834.

Ultimately, Congress settled on more targeted language: "reinstatement with or without back pay." 29 U.S.C. § 160(c). This Court should reject the *Thryv* Board's effort to ignore this limit and invite constitutional controversy.

18

## II.     En banc rehearing is warranted.

This case readily satisfies the criteria for en banc rehearing. In addition to the legal errors addressed above, the conflict with the Third Circuit is particularly troubling. The Board maintains a "nonacquiescence" policy under which it adheres to its decisions even after circuit courts reject them. *See, e.g.*, *Heartland Plymouth Ct. MI, LLC v. NLRB*, 838 F.3d 16, 21 (D.C. Cir. 2016). As a result, the Third Circuit's rejection of the *Thryv* remedy will not stop the Board from continuing to impose that remedy in future cases.

And whether such remedies will be upheld depends on which circuit winds up with the case. This appeal illustrates the likelihood that forum fights will prove outcome-determinative. Even though the union in this case substantially prevailed before the agency, it sought review in this Court, and the Judicial Panel on Multidistrict Litigation selected this Court as the forum. Panel Op. 12. The Act has a broad venue provision and broad "person aggrieved" standard for statutory standing that gives both sides in a dispute wide latitude to pick their preferred location. 29 U.S.C. § 160(f). The circuit split over *Thryv* creates strong incentives for forum-shopping.

19

The lack of predictability over the statutorily available remedies is particularly alarming in cases like this. Macy's attempted to invoke its statutory right to use economic pressure (a lockout) in its negotiations with a union, but was found by the Board to be on the hook for significant compensation. As the majority noted, the Act generally leaves employers "free to settle their differences [with a union over contract proposals] by resort to such economic weapons as . . . lockouts." *NLRB v. Amax Coal Co.*, 453 U.S. 322, 336 (1981). But the majority upheld the Board's large award of monetary relief—including both backpay and compensation for all direct or foreseeable pecuniary harm that resulted from the lockout—because of a two-day delay in Macy's contractual proposal after the union unexpectedly announced a return to work. *See* Dissent 75.

The Board's remedial framework—applied differently in different circuits—creates a severe chilling effect on employers' ability to use the lawful tools in their toolkit, as they can face long-running monetary obligations not just for traditional backpay but now also for missed mortgage payments, retirement savings withdrawals, childcare expenses, and more. *Thryv*, 372 N.L.R.B. No. 22, slip op. at 9. This practical harm from the Board and panel decisions underscores the need for further appellate

review and restore the Act's careful balance of employee and employer rights.

## CONCLUSION

The petition for rehearing should be granted.

Dated: March 17, 2025

Respectfully submitted,

s/ Michael E. Kenneally

JORDAN L. VON BOKERN
MARIA C. MONAGHAN
U.S. CHAMBER LITIGATION CENTER
1615 H Street, NW
Washington, DC 20062
(202) 463-5337

MICHAEL E. KENNEALLY
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
(202) 739-3000

*Counsel for the Chamber of
Commerce of the United States of
America*

*Counsel for Amici Curiae*

21

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

**9th Cir. Case Number(s)** <u>23-124, 23-150, 23-188</u>

I am the attorney or self-represented party.

**This brief contains** <u>4,032</u> **words,** including <u>**zero**</u> words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[**X**] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    [ ] it is a joint brief submitted by separately represented parties.
    [ ] a party or parties are filing a single brief in response to multiple briefs.
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** <u>s/ Michael E. Kenneally</u>    **Date** <u>Mar. 17, 2025</u>
*(use "s/[typed name]" to sign electronically-filed documents)*

22